United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY N. FAULK, | No. C-13-5410 EMC (pr) |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| DAVID LONG, Warden, | |
| Respondent. | |

## I.   INTRODUCTION

Gregory N. Faulk filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. In his petition, he contends that the state appellate court denied him due process and effective assistance of counsel when it denied a defense request for additional funds to further investigate an alleged instance of juror misconduct. The petition will be **DENIED**.

## II.   BACKGROUND

A.   The Crimes

The California Court of Appeal described the evidence regarding the crimes that led to the conviction of Mr. Faulk of carjacking, unlawful taking of a car, and second degree burglary.

> In the fall of 2010, defendant was homeless and went to the Hayes Mansion hotel in San Jose to look for shelter. There, he broke into the spa on the property by making holes in the wall of the hotel gym, and reaching in to unlock the door to the spa. When the hotel staff arrived at the spa in the morning of September 4, 2010, they discovered defendant inside. Defendant ran out of the spa and through the hotel parking lot, eventually jumping a wrought iron fence into a condominium or apartment complex.

> A few hours later, Huong Ho was at her parent's condominium complex to check her mail. She parked her Mercedes next to the mailboxes. Ho tried to open her mailbox, but was unsuccessful. Ho saw defendant standing near the mailboxes, and began talking to him. Defendant told her he was the building manager and that he had a master key to the mailboxes at his house. Defendant told Ho that he would open her mailbox if she drove him to his house so he could get his master key. Ho agreed, and defendant got into her car and gave Ho directions of where to go. As Ho slowed down to stop her car where defendant directed, defendant suddenly punched her in the eye, and ordered her to get out of the car. Ho got out of the car, leaving her cell phone, purse, and shoes in the car. Defendant sped away in Ho's car. Ho called the police using a phone of a nearby resident. When the police arrived, she gave a description of defendant, and the police photographed the injury to her eye.
>
> Defendant abandoned Ho's car almost immediately after driving away. He then took a 1992 Toyota belonging to Trong Nguyen from 44 South Terrace Court. Defendant abandoned the Toyota in a parking lot of a shopping center on Monterey Highway near Blossom Hill Road. Defendant used money from Ho's wallet to buy clothes at Walmart and Walgreen's. Defendant changed his clothes in the bathroom of the Walmart and a nearby Taco Bell. Police later found Ho's wallet in the Taco Bell bathroom, and arrested defendant at a nearby bus stop. Following his arrest, defendant's blood tested positive for methamphetamine.
>
> Defendant testified in his own defense at trial. He essentially admitted all of the alleged crimes; however, he claimed he never punched Ho, and did not use any force in taking her Mercedes. In addition, defendant said that Ho asked him if he could get her some methamphetamine, and agreed to drive him to a location where he could find the drug. The two then smoked methamphetamine together in the car, and when Ho got out of the car to put her pipe into the trunk, defendant slid into the driver's seat and drove away in Ho's car. Defendant said when he took the car, there was no injury to Ho's eye.
>
> In addition to his own testimony, defendant called several witnesses at trial who testified that he was not a violent person.

Resp. Ex. D, California Court of Appeal Opinion, pp. 1-3.

B.   <u>Procedural History</u>

Two trials were held. At the first trial, in May 2011, a jury found defendant guilty of unlawful taking of a car (*see* Cal. Veh. Code § 10851) and second degree burglary (*see* Cal. Penal Code §§ 459, 460), but deadlocked on the charge of carjacking (*see* Cal. Penal Code § 215). The court found true the allegations that defendant had suffered three prior strike and serious felony convictions (*see* Cal. Penal Code §§ 667(a)-(i), 1170.12). In July 2011, a second trial was held on the carjacking charge, at which a jury found defendant guilty of carjacking. At sentencing in August

2

2011, the court struck two of the prior conviction allegations and sentenced Mr. Faulk to 23 years and eight months in prison. Cal. Ct. App. Opinion, p. 3.

Mr. Faulk appealed. The California Court of Appeal affirmed the judgment of conviction. The California Supreme Court denied his petition for review. He then filed this action. The federal habeas petition asserts that the California Court of Appeal's denial of his request for further investigative funds violated his federal constitutional rights.

C.     The Request For Investigative Funds

While the direct appeal was pending, Mr. Faulk's appellate counsel applied to the California Court of Appeal for $750 to hire an investigator to find and interview a juror to inquire about potential juror misconduct. Appellate counsel declared that he had received a telephone call from defense trial counsel, Casey Clift, who informed him of the following: (a) "the deputy district attorney who tried the case spoke to some of the jurors outside the courtroom after the second trial;" (b) Mr. Clift was not present; (c) the deputy district attorney later told Mr. Clift that "an unidentified juror told her the juror saw Daniel St. Peter 'maddogging' the victim when the victim was on the stand;" and (d) Daniel St. Peter was not in the courtroom, because of the exclusion order, except for when he testified for the defense." Resp. Ex. F at 3-4.[1] The application also provided the following information: Appellate counsel had requested the trial court to unseal juror identity information, and the trial court agreed to contact Juror No. 12 to obtain his consent or objection to release of his identity. The juror had objected to a release of his identity; over the juror's objection, the trial court ordered the juror's identity to be released with a protective order limiting its dissemination to appellate counsel and an investigator/agent. *Id.* at 4. Appellate counsel had tried to contact Juror No. 12 at the telephone number provided and received no answer. Appellate counsel had then contacted a private investigator who said he was available to contact and attempt to interview Juror No. 12 in 10 hours or less at an hourly rate of $75. *Id.* at 5. Appellate counsel thought the juror might be trying to avoid contact, and thought a "professional investigator will be more efficient" than appellate counsel in "resolving this investigation." *Id.*

---

[1] One definition of mad-dog is: "[t]o stare at someone steadily and provocatively; stare someone down." *Dictionary of American Slang* 333 (4th ed. 2007).

3

The California Court of Appeal granted the application for funds to hire the investigator, but only approved fees up to $150. *Id.* at 18.

The private investigator then unsuccessfully attempted to contact Juror No. 12. The investigator unsuccessfully tried to contact the juror at the address and telephone number provided by the superior court. *Id.* at 28. The investigator went to Juror No. 12's home three times and left his card three times, and eventually concluded that the juror had moved. The investigator called the juror's telephone number provided by the court and noted that it had been changed to an unlisted number. The investigator did some research and found a possible cell phone number for the juror that apparently belonged to the juror's girlfriend. When reached at that cell phone number, the juror's girlfriend said they had moved, they had received the card, she thought the juror was going to call the investigator, and she would pass on the investigator's message for Juror No. 12 to call him. Five days later, the investigator called the cell number and spoke to the girlfriend again, and again asked her to relay the message for Juror No. 12 to call him. Two weeks thereafter, the investigator left a voicemail message on that cell phone number for Juror No. 12 to call him. In each attempted contact, the investigator explained who he was and why he was calling. Juror No. 12 never contacted the investigator.

Appellate counsel then applied for an additional $500 to pay the investigator to continue his efforts to contact Juror No. 12 by researching the juror's new address and attempting to contact him in person. *Id.* at 19-23.

The state appellate court denied the application for additional funds without explanation. *Id.* at 32.

Mr. Faulk filed a petition for review of the denial of his application for investigator fees. Resp. Ex. G. In his petition for review, Mr. Faulk contended that the court of appeal's denial of his request for further funding had denied him his right to due process and effective assistance of

counsel by preventing him from investigating potential juror or spectator misconduct. *Id.* at 4.[2] The California Supreme Court denied the petition for review without explanation. Resp. Ex. G.

### III.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Santa Clara County, California, which is within this judicial district.  28 U.S.C. §§ 84, 2241(d).

### IV.   STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review.  A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

---

[2] The issue sought to be investigated was juror misconduct based on the consideration of extraneous evidence.  There was no issue raised about Daniel St. Peter, who was the person the juror claimed to have seen "mad-dogging" the victim while the victim testified.  The inquiry would have concerned Mr. St. Peter's conduct as an audience member rather than his conduct as a trial witness. As a trial witness, Mr. St. Peter played a minimal role.  Mr. St. Peter's testimony took less than three pages at the first trial, RT 261-264, and less than five pages at the second trial, RT 594-599, of the 700+ page trial transcript.  He provided character evidence: he testified that he had worked with and been a friend of Mr. Faulk for several years.  He was of the opinion that Mr. Faulk was not a violent person, and that opinion would not change if he knew that Mr. Faulk had punched and kicked numerous holes in the walls at the Hayes mansion nor if he knew that Mr. Faulk punched a woman in the face.

1  state court decides a case differently than [the] Court has on a set of materially indistinguishable
2  facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).
3      "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the
4  state court identifies the correct governing legal principle from [the Supreme] Court's decisions but
5  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal
6  habeas court may not issue the writ simply because that court concludes in its independent judgment
7  that the relevant state-court decision applied clearly established federal law erroneously or
8  incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas
9  court making the 'unreasonable application' inquiry should ask whether the state court's application
10 of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.
11     Mr. Faulk presented his claims in his petition for review to the California Supreme Court,
12 which rejected it without discussion. *See* Resp. Ex. G. "When a federal claim has been presented to
13 a state court and the state court has denied relief, it may be presumed that the state court adjudicated
14 the claim on the merits in the absence of any indication or state-law procedural principles to the
15 contrary." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784-85 (2011) (one-sentence order
16 denying habeas petition analyzed under §2254(d)); *see also Johnson v. Williams*, 133 S. Ct. 1088,
17 1096 (2013) (order discussing state law claim but not federal claim rebuttably presumed to be
18 rejection on the merits and therefore subject to § 2254(d)). Mr. Faulk does not dispute that the
19 California Supreme Court decided his claim on the merits.

## V.    DISCUSSION

A.    <u>There Is Not An Unexhausted Claim</u>

    Before turning to the merits of the petition, it is necessary to address Respondent's argument that state court remedies were not exhausted for one of the claims. Mr. Faulk's federal petition asserts that the California Court of Appeal's denial of his funding request denied him due process and effective assistance of counsel. Docket # 1 at 8. Respondent argues that state court remedies have not been exhausted "for any claim that he was denied effective assistance of counsel." Docket # 6 at 5. The Court disagrees.

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c).

The first of the two petitions for review filed in the California Supreme Court fairly presented the denial of effective assistance of counsel claim. After the California Court of Appeal denied the request for additional funding, Mr. Faulk promptly petitioned the California Supreme Court for review of that specific decision. *See People v. Faulk*, Cal. S. Ct. No. S205607. In that petition, Mr. Faulk argued that the California Court of Appeal "denied appellant his right to due process and effective assistance of counsel in denying him funding" for the investigator. *See* Resp. Ex. G (petition for review) at 4.[3] That petition for review cited the Sixth and Fourteenth Amendments, and urged that the "constitutional right to effective counsel under both the state and federal constitutions also includes the right to reasonably necessary ancillary defense services." *Id.* at 10. The California Supreme Court denied the petition for review without comment. Resp. Ex. G. Several months later, the California Court of Appeal affirmed the judgment of conviction, and Mr. Faulk petitioned the California Supreme Court for review of that decision. *See People v. Faulk*, Cal. S. Ct. No. S208625. *See* Resp. Exs. D, E. The California Supreme Court denied that petition for review without comment. Resp. Ex. E. The first petition for review (i.e., Case No. S205607) fairly presented the denial of effective assistance of counsel claim to the California Supreme Court and sufficed to exhaust the claim, even if the claim was not repeated in the second petition for review. *See generally Castille v. Peoples*, 489 U.S. 346, 350 (1989) ("once the state courts have ruled upon a claim, it is not necessary for a petitioner 'to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review'"). State court remedies have

---

[3] Respondent presents his exhibits in an unusual way by attaching several different documents under a single exhibit label. For example, Respondent's Exhibit F has at least four different documents pertaining to the funding application. Respondent's method has the slight advantage of grouping documents by subject matter but the substantial disadvantage of confusing the user trying to cite to any particular document by exhibit letter.

7

been exhausted for the claims for denial of effective assistance of counsel and for a denial of due process.

Respondent's non-exhaustion argument appears to presume that Mr. Faulk is arguing a typical *Strickland* claim that his counsel performed incompetently. As this Court understands the petition, however, Mr. Faulk does not fault counsel's behavior and instead urges that the state appellate court's rejection of the funding request prevented him from receiving effective assistance of counsel. The usual claim for denial of effective assistance of counsel is the familiar claim that counsel failed to perform competently as discussed in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court in *Strickland* explained the development of the principle that the right to counsel includes the right to *effective* assistance of counsel, and explained that the right could be impeded both by the defense attorney as well as by the Government. As to the latter, the Government can "violate[] the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense," e.g., by barring attorney-client consultation during a recess, by barring summation at a bench trial, by requiring that the defendant be the first defense witness, and by barring direct examination of defendant. *Id*. at 686 (collecting cases). This Court understands Mr. Faulk's claim to be this less familiar sort of denial of effective assistance of counsel claim, i.e., a claim that the Government has interfered with counsel's ability to provide effective assistance, and concludes that state court remedies have been exhausted for that claim. This Court's ability to identify the sort of claim Mr. Faulk makes says nothing about the existence of the underlying right to counsel or the merits of the claim – those matters are taken up in the next two sections.

B.   <u>No Clearly Established Law Showing The Existence Of The Right</u>

Mr. Faulk's petition fails at the threshold because there is no "clearly established Federal law, as determined by the Supreme Court of the United States," which is a necessary predicate to relief in any habeas case (such as this one) governed by the AEDPA. *See* 28 U.S.C. § 2254(d)(1). Without the existence of clearly established Federal law, the state court's adjudication of the claim cannot be said to be contrary to or an unreasonable application of such law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see, e.g., id.* at 76-77 (given the lack of holdings from the Supreme Court

1  and the wide divergence of the lower courts on the issue of the potentially prejudicial effect of
2  spectators' courtroom conduct, the state court's determination that the petitioner was not inherently
3  prejudiced by spectators wearing buttons depicting the murder victim was not contrary to or an
4  unreasonable application of clearly established Supreme Court law); *Varghese v. Uribe*, 736 F.3d
5  817, 821 (9th Cir. 2013) (because there is no Supreme Court authority that squarely addresses
6  petitioner's claim – that a criminal defendant's rights to counsel and due process are violated when
7  the state court conditions his access to, and testing of, the prosecution's limited evidence on the
8  disclosure of the test results to the prosecution – the state appellate court had no specific rule to
9  apply, so its decision was not an unreasonable application of clearly established Supreme Court
10 precedent); *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (Nevada Supreme Court's
11 rejection of petitioner's conflict of interest claim was neither contrary to nor an unreasonable
12 application of clearly established federal law; although Supreme Court had held an irreconcilable
13 conflict between a defendant and his trial counsel may entitle him to new counsel, no Supreme Court
14 case had held an irreconcilable conflict between the defendant and his appointed appellate counsel
15 violates the Sixth Amendment).
16      First, Mr. Faulk's claim arises in the context of a collateral attack on his conviction – he
17 sought funds to conduct and investigate post-conviction. The Supreme Court has never determined
18 that there is a constitutional right to state court collateral review of a conviction. In *Case v.
19 Nebraska*, 381 U.S. 336 (1965), the Supreme Court granted certiorari "to decide whether the
20 Fourteenth Amendment requires that the States afford state prisoners some adequate corrective
21 process for the hearing and determination of claims of violation of federal constitutional
22 guarantees." *Id.* at 337. However, the Supreme Court ultimately did not decide the issue because,
23 after certiorari was granted, Nebraska enacted a statute providing a post-conviction remedy that
24 allowed for consideration of claims of the denial of federal constitutional rights. *Id.* The Supreme
25 Court determined that Nebraska's new statute appeared to provide the sort of hearing at issue and
26 therefore remanded the case for reconsideration in light of the supervening statute. *Id.* The
27 resolution of *Case* thus shows that it was an open question at that time whether there was a
28 constitutional right to state court collateral review of a state court conviction. *See generally Kyles v.*

*Whitley*, 498 U.S. 931, 932 (1990) (Stevens, J., concurring in order denying stay of execution) (citing *Case* for the proposition that "the scope of the State's obligation to provide collateral review is shrouded in so much uncertainty"); *Huffman v. Florida*, 435 U.S. 1014, 1017 (1978) (Stevens, J., concurring in denial of certiorari) (citing *Case* in support of proposition that, although summary reversal may have been appropriate on direct review of the conviction, and although the petitioner may succeed in a federal habeas petition, it "does not follow" "that this Court has the power to compel a State to employ a collateral post-conviction remedy in which specific federal claims may be raised.")  No subsequent Supreme Court case has been located that resolves the issue left undecided in Case.  According to one authority, the Supreme Court never had occasion to revisit the issue left open in *Case* because "after the Court's decision in that case every State in the Union did, in the exercise of reasonably deliberate speed, adopt an adequate State procedure that would be available to a state prisoner seeking postconviction relief." *Richardson v. Miller*, 716 F. Supp. 1246, 1252 (W.D. Mo. 1989).  If there is no such constitutional right to collateral review, any error committed by the state court in the course of collateral proceedings would not give rise to a federal constitutional violation.

Second, the Supreme Court has not held that a criminal defendant has a right to any counsel on state court collateral review. *See Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991) (no constitutional right to counsel on appeal from a state habeas trial court judgment); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, [citation], and we decline to so hold today.")  That the Supreme Court still has not found a right to counsel on state habeas proceedings was confirmed recently in *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), where the Court decided not to decide the constitutional question.  The lower court had addressed whether a prisoner had a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance of trial counsel.  The Supreme Court opined: "This is not the case, however, to resolve whether that exception exists as a constitutional matter." *Id.* at 1315. Instead, the matter could be resolved under the procedural default doctrine, i.e., the "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's

procedural default of a claim of ineffective assistance at trial." *Id.* Not only is there no Supreme Court case establishing a right to counsel on collateral review, the habeas statute specifically precludes relief based on the "ineffectiveness or incompetence of counsel during Federal or State post-conviction proceedings." 28 U.S.C. § 2254(i).

Third, the right to *appellate* counsel has not been held to require that appellate counsel be given the resources to investigate matters that cannot be presented in the direct appeal. The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). The constitutional right to appointed counsel extends "no further" than the first appeal as of right. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). It thus does not include a right to counsel for the pursuit of a discretionary state appeal, *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982), or a right to counsel during the filing of a petition for writ of certiorari in the U.S. Supreme Court, *Ross v. Moffitt*, 417 U.S. 600, 617-18 (1974).

Mr. Faulk's circumstances simply do not implicate a problem with the first appeal as of right, let alone a problem with the right to effective assistance of appellate counsel that the Supreme Court has recognized. If facts were ever uncovered to support a juror misconduct claim, that claim could not be presented on direct appeal because it would not be based on the trial court record, and Mr. Faulk's petition for review acknowledged that by claiming a "constitutional right to ancillary funds to pursue habeas investigation." Resp. Ex. G at 7. Since the juror misconduct claim he sought to investigate could not be presented on direct appeal (because direct appeal was limited to the trial court record), it cannot be said that the State "interfere[d]" with appellate counsel's ability to effectively represent Mr. Faulk on his first appeal as of right. *See Strickland*, 466 U.S. at 686. Similarly, since the juror misconduct claim Mr. Faulk wanted to investigate could not be presented on appeal because it would be based on matters outside the record, (a) Mr. Faulk could not show deficient performance by appellate counsel in not including in the appellate brief a potential juror misconduct claim that was not supported by anything in the record on appeal, and (b) Mr. Faulk could not show that there was a reasonable probability that, but for the denial of funding to investigate juror misconduct, he would have prevailed on appeal. *See Moormann v. Ryan*, 628 F.3d

1102, 1106 (9th Cir. 2010) (deficient performance and prejudice prongs of *Strickland* test govern claims of ineffective assistance of appellate counsel); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (*Strickland* standard applies to filing of no-merits appeal brief).

The parties identify one U.S. Supreme Court case pertaining to funding in a criminal case: *Ake v. Oklahoma*, 470 U.S. 68 (1985). That case simply cannot be stretched far enough to encompass the right Mr. Faulk asserts. *Ake* addressed the issue whether an indigent defendant who had exhibited signs of severe mental illness had a right to psychiatric examination and assistance to prepare a defense when his sanity was in question. The Supreme Court held that, "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id.* at 74. The centrality of the defendant's mental state to the issues of his criminal culpability and punishment was critical to the Supreme Court's determination that the indigent defendant must be provided access to a competent psychiatrist upon an adequate showing. *See id.* at 80-83. "[A]s in the case of the provision of counsel," the Supreme Court left "to the State the decision on how to implement this right." *Id.* at 83. *Ake* would have to be greatly extended to apply to Mr. Faulk's facts: Mr. Faulk's potential claim did not pertain to his guilt or the punishment to be imposed, did not pertain to any sanity/competence at trial, and instead pertained to an investigation for a state court collateral review proceeding. The question is not whether this Court might think *Ake* should be extended to cover any funding request in any context, but rather whether the state court's failure to do so was contrary to, or an unreasonable application of, *Ake*. The Supreme Court has made clear that a state court's failure to extend a Supreme Court rule to a new context does not support relief under § 2254(d)(1). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (in capital case, not objectively unreasonable for state court not to extend to penalty phase constitutional rule that applies to guilt phase).

Mr. Faulk asserts that California Penal Code § 1241 contemplates that counsel will be funded to represent a defendant on direct appeal as well as post-conviction proceedings beyond the direct appeal. *See* Docket # 11 at 4. This argument does not help him because a state statute is not "clearly established federal law as determined by the U.S. Supreme Court," 28 U.S.C. § 2254(d). The existence of this statute and state court cases that Mr. Faulk believes establish a right to funding of investigations in connection with state court habeas proceedings do not help him here because federal habeas relief is not available for a misapplication of state law. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011).

When the California Supreme Court considered Mr. Faulk's claim that the denial of his funding request deprived him of his rights to due process and effective assistance of counsel, there was no "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), to apply to his claim. Without the existence of clearly established Federal law, the California Supreme Court's rejection of the claim cannot be said to be contrary to or an unreasonable application of such law. *See Carey v. Musladin*, 549 U.S. at 76-77. Section 2254(d)(1) requires the denial of Mr. Faulk's claim.

C. <u>Even If There Was Clearly Established Law, The California Supreme Court's Rejection Of Mr. Faulk's Claim Would Not Have Been An Unreasonable Application Of Such Law</u>

Even if there was clearly established law from the Supreme Court finding a federal constitutional right to funds to investigate matters to present in a state collateral review petition – which this Court has just explained there is not – the California Supreme Court's rejection of Mr. Faulk's claim would not have been an unreasonable application of such law. The state appellate court had approved some funds for an investigator to talk to a juror, and rejected additional funds only after it was rather clear the juror did not want to talk to the defense or the defense investigator. At the time the state appellate court had the application for additional funds, the record had been developed that (a) the juror had objected to the trial court releasing identifying information about him to the defense, (b) Mr. Faulk's appellate counsel had unsuccessfully tried to reach the juror in one telephone call, (c) the private investigator had left his calling card on three personal visits to the juror's listed home address but received no response, (d) the private investigator had left three phone

13

1    messages at the one cell phone number he had found but received no response from the juror.  The
2    state court reasonably could have denied further funding in the belief that additional efforts to
3    contact the juror would be no more successful than the first seven efforts.
4           Additionally, the application for funds cast doubt on whether the event sought to be
5    investigated had actually occurred, as the application stated that defense counsel's recollection and
6    the record did not support the belief that the alleged "mad-dogging" spectator was in the courtroom
7    when the victim testified.  The state court reasonably could have determined that any right to
8    investigative funds did not require the State to pay for further efforts by the defense to investigate an
9    event the defense did not believe occurred.

10   D.     <u>No Federal Habeas Relief Is Available For Errors In The State Habeas Process</u>
11          Separate and apart from the absence of clearly established federal law discussed in section B,
12   there is a second reason Mr. Faulk cannot obtain federal habeas relief:  his claims are for an error in
13   the state habeas process.
14          A person in custody pursuant to the judgment of a state court can obtain a federal writ of
15   habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or
16   treaties of the United States.  28 U.S.C. § 2254(a).  In other words, "it is only noncompliance with
17   *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal
18   courts."  *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010).  Federal habeas relief is unavailable for
19   violations of state law or for alleged error in the interpretation or application of state law.
20   *See Swarthout v. Cooke*, 131 S. Ct. at 861-62.
21          Errors in the state post-conviction review process are not addressable through federal habeas
22   corpus proceedings.  *See Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) (state judge's refusal to
23   appoint counsel in second post-conviction relief proceeding might be a violation of Arizona law, but
24   does not constitute ground for a federal habeas claim because there is no constitutional right to an
25   attorney in a state post-conviction proceeding); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir.
26   1997); *Villafuerte v. Stewart*, 111 F.3d 616, 632 n.7 (9th Cir. 1997); *Franzen v. Brinkman*, 877 F.2d
27   26, 26 (9th Cir. 1989) (dismissing claim that state court's delay of over a year in deciding
28   petitioner's state post-conviction relief petition was in violation of his right to due process; "a

petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986). Such errors do not generally represent an attack on the prisoner's detention and therefore are not proper grounds for habeas relief. They instead generally pertain to the review process itself and not to the constitutionality of a state conviction. *See, e.g.*, 28 U.S.C. § 2254(i) (claims of ineffective assistance of state or federal post-conviction counsel not cognizable on federal habeas review); *Franzen*, 877 F.2d at 26 (delay in state habeas proceeding not addressable in federal habeas); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987) (denial of hearing on state collateral proceedings not addressable in federal habeas); *see also Application of Gordon*, 157 F.2d 659, 660 (9th Cir. 1946) (allegation that state court decided appeal improperly not enough to state claim in federal habeas).

The rule that federal habeas courts cannot address errors in the state post-conviction procedure (such as a state habeas proceeding) may appear confusing at first blush in light of the fact that federal habeas courts routinely entertain claims that were presented in state court in a state habeas petition. The critical dividing point for determining whether the claim is barred by the rule in the preceding paragraph is whether the claim is of a constitutional violation at the underlying trial and appeal or of an alleged constitutional violation in the state habeas proceedings. In a federal habeas action, the former can be entertained but the latter cannot.[4] Although claims may arrive in a federal habeas court after having been presented to state courts in state habeas petitions, the federal court can entertain only those claims that pertain to the trial and appeal, but not to the state habeas proceeding. The next step is to figure out whether Mr. Faulk's claims are for violations in the trial proceedings or for violations at the state habeas proceedings.

---

[4] Examples of claims that may have been raised in a state habeas proceeding that are for constitutional violations in the trial proceedings (and therefore are cognizable in a federal habeas action) include a claim of a biased trial judge, a *Brady* claim, and a claim of ineffective assistance of counsel at trial. Examples of claims that may have been raised in a state habeas proceeding or are based on a state habeas proceeding that *are not* for constitutional violations in the trial proceedings (and therefore *are not* cognizable in a federal habeas action) include a claim that a petitioner was denied counsel in the state habeas proceeding, a claim that there was a delay in the state habeas proceeding, and a claim that the state habeas court erroneously excluded evidence.

Mr. Faulk's due process and denial of effective assistance of counsel claims are not cognizable in a federal habeas action because as noted above, they are for errors occurring in potential state habeas proceeding.

Mr. Faulk alleges that the California Court of Appeal wrongly denied him funding to investigate a claim that he could present only in a potential state habeas petition. He wanted to investigate potential juror misconduct and (if he found it) he would have had to present it in a state habeas proceeding because the claim would have been based on materials outside the record on appeal. *See People v. Merriam*, 66 Cal. 2d 390, 396 (Cal. 1967) (matters outside the record are not generally reviewable on appeal), *overruled on other grounds by People v. Rincon-Pineda*, 14 Cal. 3d 864, 882 (Cal. 1975). The claim Mr. Faulk presents in his federal habeas petition goes to the substance of the appellate court's decision in connection with a potential state habeas proceeding, not a claim on direct appeal. Mr. Faulk did not claim in the state court or here that his potential juror misconduct claim was part of his appeal or intended to be presented on appeal. *See also* Petition For Review (Resp. Ex. G) at 7 (urging that Mr. Faulk had a "constitutional right to ancillary funds to pursue habeas investigation"). His claim asserts a mistake in the state habeas proceedings, even if there was no state habeas petition on file at the time he requested funds to investigate a claim he would have to present in a state habeas petition, if at all. Mr. Faulk does not identify or allege a constitutional violation that occurred at his trial – indeed, to this day, he does not know whether there was any juror misconduct at his trial.

There is no cognizable federal due process claim or denial of effective assistance of counsel claim based on the state appellate court's rejection of the funding request.

E.     A Certificate Of Appealability Will Not Issue

Mr. Faulk has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and this is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **DENIED**.

///

///

### VI. CONCLUSION

The petition for writ of habeas corpus is **DENIED** on the merits. The Clerk shall close the file.

IT IS SO ORDERED.

Dated: February 2, 2015

_____
EDWARD M. CHEN
United States District Judge